GROUND GRIPPER SHOE CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17940, 19371. Promulgated December 12, 1930.

*Fred Van Dolsen, Esq., Milton B. Ignatius, Esq.*, and *H. Cabell, Esq.*, for the petitioner.

*J. L. Backstrom, Esq., P. A. Sebastian, Esq.*, and *R. A. Murphy, Esq.*, for the respondent.

648

OPINION.

SMITH: The first question presented by these proceedings is the application of section 331 of the Revenue Acts of 1918 and 1921 to the facts presented by the record. This section provides, so far as material, as follows:

In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: * * *

It is the contention of the respondent that E. W. Burt was practically the sole stockholder of E. W. Burt & Co., and that upon the organization of the petitioner he received all of the capital stock of the petitioner or, in any event, retained more than a 50 per cent ownership in the value of the assets transferred to the petitioner on July 15, 1920. The respondent contends that under the agreement entered into between Burt and Julian, Burt had the right to retain the common stock for a period of 30 days after incorporation of the petitioner and that during such period he was both legal and beneficial owner of all of the stock of the petitioner; that it is immaterial under the agreement that Burt was required eventually to turn over the common stock to Julian; that this ownership of the common stock for an appreciable interval of time was sufficient to make section 331 applicable in the proceedings at bar. In support of this contention

the respondent cites *Shipowners & Merchants Tugboat Co.*, 4 B. T. A. 403, in which the Board stated:

\* \* \* it is not a change of interest or control which is the first consideration, but a change of ownership, and this occurs at a time and not vaguely over a period.

\* \* \* But the statute is in our opinion clearly applicable and leaves no room for construction.

The respondent further cites *Keen & Woolf Oil Co.*, 15 B. T. A. 542, in which we said:

\* \* \* Section 331 has reference to the interest or control which exists at the time the stock is issued for property; not to the situation which may exist at some future time if the new company is successful in selling more of its stock. We must look to the situation on May 22, 1919; not to that which existed on December 3, 1919. At that time we find the entire ownership and control in Keen and Woolf.

The respondent further contends that since under the charter of the petitioner the right of the holders of the common stock to vote. such stock should be suspended so long, but only so long, as dividends or any accrued dividends on the unpaid stock are unpaid, and since the returns filed by the petitioner show a cash dividend on the preferred stock on January 15, 1921, of $15,000, a further dividend on April 15, 1921, of $4,014.50, a reserve for dividends of $9,200, a cash dividend paid on July 15, 1921, of $4,600, another on January 15, 1922, of $13,441.67, and a reserve for dividends at April 30, 1922, of $8,600, it must be assumed that dividends were not paid regularly on the preferred stock; that the voting rights of the common stock were suspended; and that the only stock which could be voted was the preferred stock of which Burt was the owner.

We think there is no merit in the latter contention. The evidence adduced indicates that from July 15, 1921, Burt took no part in the management of the petitioner. The contract under which the loan of $350,000 was made by Julian to Burt provided that the rights of Julian should be as follows:

1. To hold the certificates for said stock, except upon payment by me or my legal representatives as hereinbefore provided, and except upon surrender thereof to the corporation, as hereinafter provided;

2. To receive from me semiannually to his own use interest at the rate of 6 per cent per annum on so much of the principal sum as remains unpaid; and I hereby authorize him to receive from said corporation, and the said corporation to pay to him all dividends that may be declared on such stock as is held by him in pledge as aforesaid, all such dividends to be applied *pro tanto* as payment of interest due from me under the provision hereof.

Therefore, even though the returns do not show that dividends were paid in cash on the regular dividend dates upon the entire amount of preferred stock outstanding, there is no implication that Burt thereby acquired any right to vote his preferred stock. But,

as above stated, the evidence all shows that the contracts entered into between Julian and Burt were fully complied with.

We can not grant the contention of the respondent that Burt, for any appreciable length of time, acquired the beneficial ownership of the common stock. Under the terms of the agreements which led up to the sale of the assets of E. W. Burt & Co. to petitioner on July 15, 1920, Julian agreed to organize a New York corporation with a capital stock of 5,000 shares of 6 per cent preferred stock of $100 par value per share, and 10,000 shares of no-par-value common stock. Julian also agreed to advance to Burt a loan of $350,-000 upon the security of a like par value of preferred stock and to redeem the preferred stock at the rate of $50,000 per annum. Burt, on his part, agreed that if this were done and the loan made to him, he would assign to Julian his certificate for 10,000 shares of the common stock within 30 days from date of the organization of the corporation. Julian made the loan of $350,000 to Burt on July 15, 1920. On the same day, E. W. Burt & Co. transferred to the petitioner the assets of E. W. Burt & Co. Under this agreement, Burt was required to assign the common stock to Julian within the period of 30 days. He actually did assign it to him on July 17, 1920, only two days after the sale of the assets of E. W. Burt & Co. to the petitioner. It seems to us that the substance of the transaction is that Burt held the common stock for a period of two days only for the benefit of Julian. The substance of the transaction is not affected by the mechanics by which it was carried into effect.

The facts in the proceedings at bar are substantially the same as those which obtained in *H. L. Newman Co. et al.*, 16 B. T. A. 533, wherein we held that section 331 of the Revenue Act of 1921 was not applicable where the owner of a business received practically all of the stock of a corporation but immediately transferred it in accordance with the preexisting agreement that he should sell it. We there said:

We do not believe the word " remains," as used by Congress is to be construed as applying to a state of facts in which the person who receives the stock has entered into a definite agreement to have such stock reissued to others and who carries out such agreement coincident with the issuance to him of the stock. In *W. A. Sheaffer Pen Co.*, 9 B. T. A. 842, relied on by the respondent, the interval between receipt of the stock by the former holders of the property and their disposition of such stock was nearly a year. We said:

" Here, the stockholders of the old company lawfully came into possession of all the issued stock of the new, with no obligation on their part unperformed. Their subsequent disposition of stock, both as to time and amount, was entirely discretionary."

So we held section 331 applicable. But in this proceeding there was a definite obligation unperformed, i. e., the immediate transfer of the stock to others. We consider that the interest or control did not " remain " in H. L. Neuman.

Upon the authority of the *Neuman* case, the motion of the respondent to increase the deficiency for the fiscal period ended April 30, 1921, by the application of section 331 to the stated facts is denied and, pursuant to the stipulation, the invested capital of the petitioner should be increased for the fiscal year ended April 30, 1922, over the amount allowed by the respondent by the sum of $199,954.48, to stand at a total of $714,970.91.

The second point in issue in these proceedings is the question of the affiliation of the petitioner with the Ground Gripper Stores, Inc. The Revenue Acts of 1918 and 1921 provide in section 240 (b):

For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

The petitioner bases its claim to affiliation on the grounds that the board of directors of the Ground Gripper Stores, Inc., was composed of directors of the Ground Gripper Shoe Co.; that it controlled the management of the Ground Gripper Stores, Inc.; and that it had an agreement with O. K. Dorn to the effect that in the event of his death or separation from the petitioner his stock would be purchased by the petitioner. The control contemplated by the statute is that which gives rise to beneficial interest and not that which arises from the exercise of authority, management of the business, or acquiescence by the minority interests. *Montana Mercantile Co.* v. *Rasmusson,* 28 Fed. (2d) 916; *Commissioner of Internal Revenue* v. *Adolph Hirsch & Co.,* 30 Fed. (2d) 645; *Ice Service Co.* v. *Commissioner of Internal Revenue,* 30 Fed. (2d) 230; *Goldstein Bros. Amusement Co.* v. *White,* 33 Fed. (2d) 787; *American Auto Trimming Co.* v. *Lucas,* 37 Fed. (2d) 801; *St. Louis Bridge Co.,* 17 B. T. A. 185. Julian testified that he had an agreement with O. K. Dorn which provided that in the event of Dorn's separation from the company his stock would be sold to the corporation. Julian was not clear whether the agreement was in writing. He said: "My opinion was that it was in writing." There is no evidence as to when the agreement was entered into. It may have been entered into subsequent to the years here in issue or prior thereto. If entered into at the time of the organization of the Ground Gripper Stores, Inc., it apparently would have been made a part of the organization agreement between Dorn and Julian, as the agreement covered all the provisions relative to the stock issue. It can not be ascertained from the record how much stock O. K. Dorn originally owned which was subject to the agreement. Under the terms of the agreement as testified to there was nothing to prohibit Dorn from transferring his stock while connected with the Ground Gripper Stores, Inc.,

and if he did the agreement would have had no application to the transfer of the stock. When this stock was sold to the corporation in 1921, Dorn owned but 2,572 shares of common stock of the original issue of 4,495 shares, and only 618 of the 1,147 shares of preferred stock.

An inspection of our findings shows that upon the organization of the Ground Gripper Stores, Inc., $114,700 of $281,000 par value of the preferred stock and 3,395 shares out of 7,000 shares of common stock were issued to the O. K. Dorn Shoe Co. There is no evidence that either the petitioner or Julian owned or controlled this stock. Further, there is no evidence that Dorn was the same interest as Julian. Undoubtedly, all of the stockholders of the Ground Gripper Stores, Inc., had the interest of profits and successful operation in common. But this did not constitute control of substantially all of the stock by the same interests within the meaning of the statute. In *Wadhams & Co. v. United States*, 67 Ct. Cls. 235, in denying affiliation because of an outstanding 20 per cent of stock, the court said:

The plaintiff did not "own directly or control through closely affiliated interests" or otherwise "substantially all the stock" of the Perfection Company [the subsidiary]. * * * True, the plaintiff [the parent company] managed the business of the Perfection Company and controlled its operations, but in order to come within the provisions of the statute the control must be of substantially all the stock, * * *

In *Montana Mercantile Co. v. Rasmusson, supra*, the court stated:

* * * Moreover, the object of the statute is taxes proportionate to income and equality between taxpayers, to accomplish which the actual or ultimate taxpayer is ascertained by looking quite through the corporate entities. And in the course thereof, if it be found that the gains and losses of several corporations accrue to or fall upon substantially the same shareholders, taxpayers, the accounts of the corporations are balanced between themselves, to ascertain the actual gains to the common owners and upon which they should pay taxes.

In brief, the benefits of the statutes extend to those subject to the hazards of the enterprise, and only when they are substantially one and the same.

On behalf of petitioner it is contended that there was economic unity between the petitioner and the Ground Gripper Stores, Inc. This is doubtful, however. The record shows that Dorn controlled the buying of merchandise from the petitioner to be sold by the Ground Gripper Stores, Inc., and that the petitioner sold the majority of its manufactured product to other companies at the same price charged the Stores company. This indicates clearly that the two corporations operated independently of each other.

As the record stands, Julian owned and controlled during the taxable periods involved 80 per cent or more of the outstanding capital stock of the petitioner which in turn owned less than 60 per cent

of both classes of stock of the Ground Gripper Stores, Inc. This clearly was not substantially all of the stock of the Ground Gripper Stores, Inc. The disallowance of the claim of affiliation by the respondent is sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

STERNHAGEN, TRAMMELL, and MURDOCK dissent.